UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

G. Eric Brunstad, Jr., Individually
and as Trustee of the Brunstad
Family Living Trust,

v.

Case No. 24-cv-264-SE
Opinion No. 2026 DNH 033

C. Judith Brunstad, Individually
and as executrix under the will of
George Eric Brunstad, Sr. et al.

O R D E R

On August 27, 2024, G. Eric Brunstad filed suit individually and as trustee of the Brunstad Family Living Trust against his stepmother, C. Judith Brunstad, individually and as executrix under the will of Eric's father, George Eric Brunstad, Sr., who died on July 31, 2023. Eric alleged multiple claims relating to the disposition of Trust assets, a claim against George's estate for sexual abuse, and claims for tortious interference with inheritance or gift and intentional infliction of emotional distress.

On July 24, 2025, Darin K. Brunstad was appointed as the administrator of George's estate. Shortly thereafter, Eric filed an amended complaint, naming Darin (in his capacity as the estate administrator) as a defendant and adding a claim for breach of fiduciary duty.

Judith now moves to dismiss all claims against her, asserting that Eric lacks standing to pursue certain claims, fails to join a necessary and indispensable party, and fails to state a claim upon which relief can be granted. Eric objects.

Standard of Review

Although review of a motion for "a Rule 12(b)(6) dismissal for failure to state a claim and review to ensure the existence of standing are conceptually distinct, the same basic

principles apply in both situations." Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016); see Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). "Just as the plaintiff bears the burden of plausibly alleging a viable cause of action, so too the plaintiff bears the burden of pleading facts necessary to demonstrate standing." Hochendoner, 823 F.3d at 730 (citation omitted). "Each element of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" Id. (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). Thus, the court applies "the plausibility standard applicable under Rule 12(b)(6) to standing determinations at the pleading stage." Id.

To review the sufficiency of the claims under that standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard "demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013). Applying that standard when a party challenges the plaintiff's standing, the court must "accept as true all well-pleaded factual averments in the . . . complaint and indulge all reasonable inferences therefrom." In re Financial Oversight and Management Board for Puerto Rico, 110 F.4th 295, 308 (1st Cir. 2024) (alteration and citation omitted). The plaintiffs "'need not definitively prove [their] injuries or disprove the [defendants'] defenses,' but need only 'plausibly plead on the face of [their] complaint' facts supporting standing." Id. (quoting Tyler v. Hennepin Cnty., 598 U.S. 631, 637 (2023)) (cleaned up).

2

Background

The following facts set forth in the amended complaint are taken as true for the purpose of resolving the present motion. Eric is George's son and Judith's stepson. Judith has been Eric's stepmother for over 40 years.

I.    Allegations of Abuse

As a child, Eric lived with George, who was frequently violent with Eric and subjected him to beatings. When Eric was eight, George sexually abused him. For most of his adult life, Eric repressed his memories of George's sexual abuse. However, after funeral services for George following his death in July 2023, Eric learned that George had sexually abused George's step-granddaughters (Judith's granddaughters). Eric further learned that, after one of the step-granddaughters began to recall George's abuse, the girl's mother had confronted George and Judith. Thus, Judith was also aware of George's abuse.

Eric learned that Judith was unwilling to acknowledge the trauma that George's abuse had inflicted on her granddaughters. Judith instead covered up the abuse so that she could continue her relationship with George and continue to benefit from his financial support. Judith and George did not tell Eric about George's abuse of his step-granddaughters, despite George's frequent contact with Eric's own children.

After learning of George's abuse of his step-granddaughters, Eric began to recall his own sexual abuse by George. Those recollections were devastating and debilitating and Eric sought and continues to attend psychological counseling.

Eric confronted Judith about George's sexual abuse. She stated that she believed Eric's recollection, but she showed no compassion for the abuse that Eric had suffered. Instead, she

expressed anger and annoyance at Eric for bringing it up. Eric explained to Judith that he had

learned through counseling that the most damaging response to his recollection of George's

abuse would be for Judith to deny or dismiss the abuse. Judith remained unmoved and continued

to express annoyance and indifference to Eric's suffering.

Judith's response to Eric's allegations of abuse was particularly hurtful because Eric had

been a devoted and loving son and stepson to George and Judith. He visited and contacted them

frequently and assisted them when they needed help. For example, when Judith was under

investigation by the New Hampshire Attorney General's Office, Eric offered his assistance, met

with members of the Attorney General's staff on her behalf, and successfully resolved the matter

so that no further action was taken against Judith.

After Eric's meeting with Judith, other family members confronted Judith about Eric's

distress. Judith responded by writing to Eric that she would not "subject herself" to any

"maligning of George's character," and was only willing to hear "positive memories" about

George. Doc. no. 37, ¶ 34. Judith also barraged Eric's phone with photo messages showing her

and George, smiling and laughing together.

II.     The Brunstad Family Living Trust

Arthur and Helen Brunstad, Eric's grandparents (and George's parents), left substantial

property in trust for the benefit of George and his sons, including Eric. Eric is the duly-appointed

successor trustee of the trust, referred to as the "Brunstad Family Living Trust." Pursuant to the

terms of the Trust, George, as trustee, was entitled to income from the Trust property during his

lifetime. Upon George's death, the Trust property was to be distributed "to or for the benefit of

any or all of the members of the group consisting of George's children and grandchildren." Doc. no. 37, ¶ 23 (quotations omitted).

In 2002, George took $424,000 of Trust property to purchase real estate located at 4 Swain Road, Meredith, New Hampshire, where he and Judith then resided. George told Eric that he had used Trust funds to purchase the Swain Road property. Eric explained to George that the funds should be preserved as Trust property. George promised Eric that Eric's and his brothers' interest in the Trust would be preserved. He told Eric that, under his then-current estate plan, George's property, including the Swain Road property, would pass into a trust upon his death. That trust would provide for Judith until she died (assuming she outlived George), and, upon Judith's death, would pass to Eric and his other sons. When George and Judy later executed a new estate plan, Eric paid for its documentation to ensure that it would be properly conceived. Whatever documentation was produced, however, it appears that it was inconsistent with Eric's understanding or later superseded.

In 2021, George sold the Swain Road property. He used the proceeds from its sale to purchase property at 3 Abbey Lane, Unit 7, in Meredith, where he lived with Judith until his death in 2023. George was hospitalized shortly before his death, and, while in the hospital, he instructed that Eric should receive a copy of his estate plan, over Judith's protests.

After George's death, Eric met with Judith to discuss George's estate plan. At that time, Eric explained to Judith that George had taken Trust property in 2002 to purchase the Swain Road property. Eric further explained that, because the proceeds from the Swain Road sale were used to purchase the Abbey Lane property, the Abbey Lane property constituted Trust property (or proceeds of the Trust property), which George held for the benefit of Eric and his brothers.

5

III.    Judith's Disposition of George's Estate

George's final will named Judith as executrix. Unlike prior estate plans, George's final estate plan left his property largely to Judith.

After George's death, Judith collected George's personal property, sold his car, disposed of his firearm, paid at least some of his debts, and distributed his personal property, largely to herself. She also published George's will, giving George's creditors notice of his death. And, despite having been informed by Eric that the Abbey Lane property constituted Trust property (or the proceeds of Trust property) held by George for the benefit of Eric and his brothers, Judith sold the Abbey Lane property in October 2023. She relocated to Hawaii with the proceeds from the sale.

Eric filed suit against George's estate and against Judith, asserting claims for sexual assault, unjust enrichment, breach of fiduciary duty, tortious interference with inheritance or gift, and intentional infliction of emotional distress. He also sought equitable relief in the form of a declaratory judgment concerning the Abbey Lane property, the impression of a constructive trust over the Abbey Lane property, and an accounting of the Abbey Lane Property.

While the suit was pending, administration of George's estate proceeded in the New Hampshire Superior Court, Probate Division (Laconia). On July 24, 2025, Darin K. Brunstad was appointed the administrator of George's estate. Accordingly, Eric amended his original complaint to add Darin as a defendant in that capacity.


Discussion

The amended complaint asserts eight claims. Eric brings five claims against both defendants: sexual assault (Count One); trust fund property – declaratory judgment (Count Two);

6

trust fund property – constructive trust (Count Three); accounting (Count Five); and breach of fiduciary duty (Count Six). He brings three claims against Judith alone: unjust enrichment (Count Four); tortious interference with inheritance or gift (Count Seven); and intentional infliction of emotional distress (Count Eight). Judith moves to dismiss all claims.

I.      Sexual Assault (Count One)

Eric alleges that George committed sexual misconduct offenses against him in violation of New Hampshire Rev. Stat. Ann. (RSA) § 632-A:3(III)(a)(1), and those offenses have caused him emotional and physical injuries, including emotional distress, loss of enjoyment of life, and permanent impairment. Judith moves to dismiss the claim on two bases. First, she argues that Eric lacks standing to sue her. Second, she contends that Eric's claim is time-barred.

With regard to her standing argument, Judith notes that she is not the executrix of George's estate, and Eric does not allege any wrongful conduct by her against him in Count One. As such, she asserts, Eric's claim for sexual assault lies only against Darin Brunstad as administrator of George's estate.

Eric responds that Judith is a proper party to his claims against George's estate because she "intermeddled" in the estate, as that term is defined in RSA 553:17. That statute reads: "[i]f any person unlawfully intermeddles with, embezzles, alienates, wastes or destroys any of the personal estate of a deceased person he shall be liable to actions of the creditors and others aggrieved, as executor in his own wrong, to double the value of such estate." RSA 553:17. According to Eric, Judith unlawfully intermeddled with "George's property without being court-

appointed," doc. no. 37, ¶ 42, and is therefore liable for the estate's debts as an executor in her own wrong (also known as an executor *de son tort*).[1]

Absent certain exceptions, after an individual dies, their estate – which consists of their property at the time of death – goes to probate. Depending on the circumstances, however, certain of the decedent's assets will avoid probate because those assets are transferred outside the terms of the decedent's will. See § 3.5 Nonprobate Transfers – General Overview; A Practical Guide to Estate Planning in New Hampshire, 2012 WL 12096794. As an example, property held by the decedent in joint tenancy with the right of survivorship transfers to the surviving tenant without entering the probate process. See Hayes v. S. New Hampshire Med. Ctr., 162 N.H. 756, 759 (2011) ("The distinguishing feature of a joint tenancy is the survivorship right, by which a surviving joint tenant succeeds to the entire real estate upon the death of the other joint tenant."). If an asset passes outside the probate process upon the decedent's death, it does not fall within the decedent's probate estate.

The court cannot address Judith's motion to dismiss Count One because it is unclear whether the probate exception to federal jurisdiction applies.[2] The probate exception to federal jurisdiction "reserves to state probate courts the probate or annulment of a will and the

---

[1] New Hampshire common law defines an executor *de son tort* as "one, who, without any authority from the deceased or the court of probate, does such acts as belong to the office of an executor or administrator." Emery v. Berry, 28 N.H. 473, 481 (1854). RSA 553:17 essentially codifies that common law principle and imposes liability upon the intermeddler for damages not to exceed the actual amount proven or double the amount of the estate, whichever is less. As the New Hampshire Supreme Court explained in Bellows v. Goodall, 32 N.H. 97, 100 (1855), "in the case of the executor in his own wrong, he is under the statute to be considered as having the goods of the estate in his hands, against which the creditors may proceed by suits for the satisfaction of their claims, until this double value has been exhausted."

[2] Although Judith does not raise the probate exception to federal jurisdiction in her motion to dismiss, it is "black-letter law that a federal court has an obligation to inquire sua sponte into its own subject matter jurisdiction." McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004) (citations omitted).

administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Marshall v. Marshall, 547 U.S. 293, 311 (2006). In other words, "when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res." Id. at 311 (citations omitted). In Marshall, the Supreme Court clarified that "the probate exception reserves to state probate courts [1] the probate or annulment of a will and [2] the administration of a decedent's estate; it also [3] precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Id. at 311–12.

Even at this nascent stage of the litigation, the parties' respective arguments suggest that determining whether Judith intermeddled with George's personal estate might require the court to assume "control of the property in the custody of the state court."[3] Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 23 (1st Cir. 2010). For example, Judith argues that she did not intermeddle with George's personal estate because, pursuant to RSA 458:16-a, personal property acquired during a marriage is jointly owned by husband and wife. So, for this court to determine whether Judith intermeddled (or simply sold possessions that she owned), the court would likely conduct an accounting of the estate's assets, determine when those assets became part of George's estate, and then decide whether those assets rightfully belong to Judith. Such analyses and determinations could potentially implicate the disposition of property (or the "res") currently in custody of the state probate court.

---

[3] Although the amended complaint alleges that Judith intermeddled with George's estate generally and not merely with his personal property that is a part of the estate, it appears doubtful that Judith's sale of the Abbey Lane property could render her an intermeddler. The amended complaint specifically alleges that proceeds from the sale are the property of the Brunstad Family Living Trust, not George's estate.

For that reason, the court denies Judith's motion to dismiss Eric's sexual abuse claim against her without prejudice. The parties shall submit briefing as to whether and to what extent the probate exception to federal jurisdiction may apply to that claim in accordance with the schedule set forth below. Should the court ultimately determine that the probate exception is not applicable, the court will then address Judith's limitations argument.

II.      Trust Fund Property – Declaratory Judgment (Count Two)

Judith moves to dismiss Eric's request for a declaratory judgment that the Abbey Lane property (or the proceeds from its sale) is rightfully the property of the Trust. She argues that he has not stated a claim, that the claim fails to satisfy the statute of frauds, and that it is time-barred. None of those arguments is availing.

Judith first argues that the amended complaint does not explain adequately how the claim lies against her since she is neither a trustee of the Brunstad Family Living Trust, a beneficiary of the trust, or the executor of George's estate. She states that, because the claim relies solely on George's conduct with respect to the Trust, the claim is not adverse to Judith individually.

Judith is technically correct that Count Two does not state a viable cause of action. As she points out, a request for a declaratory judgment is not a cause of action; it is a remedy. See Buck v. Am. Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (explaining that the Declaratory Judgment Act "creates a remedy, not a cause of action"). However, to the extent that Judith is arguing that Eric's request for declaratory relief should be stricken, that argument is not convincing. Eric alleges that George failed to administer properly the Trust when he failed to ensure that Trust funds used to purchase the Abbey Lane property were preserved as Trust property. Eric further alleges that Judith knowingly took Trust property – the proceeds from the

10

sale of the Abbey Lane property – to which she was not entitled. Those allegations suffice at this early stage of the litigation to support a request for declaratory judgment.

Judith's argument that Eric's claim fails to satisfy the statute of frauds misapprehends the basis for Eric's claim. Broadly speaking, "the statute of frauds renders oral contracts that cannot be performed within one year unenforceable." Thompson v. Paul G. White Tile Co., Inc., No. 19-CV-513-SM, 2019 WL 4060375, at *2 (D.N.H. Aug. 28, 2019) (citing RSA 506:2). It also provides, as applicable to Eric's claim, that "[n]o action shall be maintained upon a contract for the sale of land unless the agreement upon which it is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person authorized by him in writing." RSA 506:1. But Eric does not contend that George orally granted him an interest in the Swain Road property. Instead, he alleges that George failed to administer the Brunstad Family Living Trust properly when he did not comply with the Trust's requirement that, upon his death, "the trust estate was to be distributed to and for the benefit of any or all members of the group consisting of George's children and grandchildren." Doc. no. 37, ¶ 23. Because Eric's claim is not based on an oral promise that George made or an agreement to convey real property, the statute of frauds does not apply.

For similar reasons, Judith's argument that Count Two is time-barred is unavailing. Judith argues that the relevant wrong took place in 2002. But that is not what Eric alleges in his amended complaint. Instead, he contends that – with respect to his Trust-related claims – the relevant wrong occurred in 2023, when George died without ensuring proper disposition of the Trust property.

For these reasons, the court denies Judith's motion to dismiss Count Two.

III.    Trust Fund Property – Constructive Trust (Count Three)

Count Three of the amended complaint states: "the property located at 3 Abbey Lane, Unit 7, in Meredith, New Hampshire and/or the proceeds from its sale should be impressed with a constructive trust." Doc. no. 37, ¶ 50. Similarly, in his Prayer for Relief, Eric asks the court to impose a "constructive trust for the benefit of Plaintiff on the property located at 3 Abbey Lane, Unit 7, in Meredith, New Hampshire, and/or the proceeds thereof." Id. at 12.

A constructive trust "is a court-imposed device, essentially remedial in purpose, to achieve equitable restitution 'where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." Zimmermann v. Epstein Becker & Green, P.C., 657 F.3d 80, 83 (1st Cir. 2011) (quoting Great–West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002)). As the New Hampshire Supreme Court explained, the "specific instances in which equity imposes a constructive trust are numberless, as numberless as the modes by which property may be obtained through bad faith and unconscientious acts." In re Est. of Couture, 166 N.H. 101, 111–12 (2014) (citations and quotations omitted). However, the "principle rests upon the doctrine that restitution will be compelled to prevent unjust enrichment." McLaughlin v. McLaughlin, No. 2024-0254, 2025 WL 2837966, at *2 (N.H. Oct. 7, 2025).

Judith argues that Eric's constructive trust claim must be dismissed for failure to join necessary parties because Eric has not named the current owners of 3 Abbey Lane as parties. New Hampshire law is clear that it is the plaintiff's duty to join all parties with legal interest to the property. Cf. Porter v. Coco, 154 N.H. 353, 357 (2006) ("A trial court may not render judgment quieting title to disputed property 'in the absence of parties with a duly recorded interest in the property, unless those parties claimed no interest and the petition so alleged.")

12

(quoting Sorenson v. Wilson, 124 N.H. 751, 758 (1984)); P.J. Currier Lumber Co. v. Stonemill Const. Corp., 120 N.H. 399 (1980) (adjudicating lien claim and stating because "the interest in the lots rested solely with the new property owners, [and] . . . their interest was in danger of being permanently and adversely affected, they were necessary parties."); Tsiatsios v. Tsiatsios, 144 N.H. 438, 444–45 (1999) ("A party is not necessary to an action where its rights in the property would not be affected by a judgment in the case."). Judith contends that, should the court order the Abbey Lane property placed in constructive trust, the current property owner's title would be affected without notice or an opportunity to defend.

Eric argues in his objection to Judith's motion to dismiss that he is not seeking relief against the current owners of the Abbey Lane property, but instead against Judith with respect to the proceeds from its sale. He asserts that he "has not filed a claim against the current owners of the property and does not seek any relief against them; nor do they have any interest in the proceeds of the sale." Doc. no. 40-1 at 14. Although his amended complaint is arguably inconsistent with that statement, see doc. no. 37, ¶ 50 ("Alternatively, the property located at 3 Abbey Lane, Unit 7, in Meredith, New Hampshire and/or the proceeds from its sale should be impressed with a constructive trust."), the court dismisses Count Three to the extent that it seeks to impose a constructive trust on the Abbey Lane property in light of Eric's representation.

Judith also argues that Eric's claim for a constructive trust over the proceeds from the sale of the Abbey Lane property must be dismissed because Count Three fails to state a claim and because it is barred by the statute of limitations. "To survive a motion to dismiss a constructive trust claim, a plaintiff must plead sufficient facts to show that (1) a confidential relationship existed between two people; (2) one of them transferred property to the other; and (3) the person receiving the property would be unjustly enriched by retaining it, regardless of

13

whether the person obtained it honestly." Salomon v. Lot 3.3 Stoneybrook Connector, LLC, No. 2022-0294, 2023 WL 3494842, at *1 (N.H. May 17, 2023).

Eric's allegations suffice to survive Judith's motion to dismiss the claim. "A confidential relationship exists if there is evidence of a family relationship in which one person justifiably believes that the other will act in his or her interest." In re Est. of Cass, 143 N.H. 57, 60 (1998). Here, Eric has alleged that Judith and George were married for more than 40 years, which, at this stage, is a sufficient predicate to establish a confidential relationship. He further alleges that George transferred Trust property to Judith, and that Judith would be unjustly enriched by retaining that Trust property. Construing all reasonable inferences in Eric's favor, as the court must, the amended complaint adequately and plausibly alleges a sufficient factual basis for Eric's constructive trust claim with respect to the proceeds from the sale of the Abbey Lane property.

Finally, Judith's statute of limitations argument is unavailing for reasons similar to those discussed with respect to Eric's declaratory judgment claim. Her limitations argument misapprehends Eric's claim, which does not rest upon his conversation with George in 2002. Instead, it is predicated on George's failure to administer the Brunstad Family Living Trust properly because he neglected to comply with the Trust's requirement that, upon his death, "the trust estate was to be distributed to and for the benefit of any or all members of the group consisting of George's children and grandchildren." Doc. no. 37, ¶ 23. Thus, Eric alleges that – with respect to his Trust-related claims – the relevant wrong occurred in 2023, when George died without ensuring proper disposition of the Trust property.

In sum, Judith's motion to dismiss Eric's claim for constructive trust over the Abbey Lane Property itself is granted, but it is otherwise denied.

IV.    Unjust Enrichment (Count Four)

In support of her motion to dismiss Eric's unjust enrichment claim, Judith argues that the claim fails because she and Eric are not in privity of contract, and because she has not received a benefit from Eric that it would be "unconscionable" for her to retain. Neither argument is persuasive.

"The doctrine of unjust enrichment is that one shall not be allowed to profit or enrich himself at the expense of another contrary to equity." Est. of Mortner v. Thompson, 170 N.H. 625, 631 (2018) (quoting Pella Windows and Doors v. Faraci, 133 N.H. 585, 586 (1990)). To state an unjust enrichment claim, a plaintiff must adequately allege that the defendant was enriched at plaintiff's expense through either: (1) wrongful acts; or (2) 'passive acceptance of a benefit that would be unconscionable to retain.'" Id. (quoting Kowalski v. Cedars of Portsmouth Condo. Assoc., 146 N.H. 130, 133 (2001)). Thus, "a plaintiff in an unjust enrichment case need not prove that the defendant obtained the benefit through wrongful acts; passive acceptance of a benefit may also constitute unjust enrichment." Inv. Almaz v. Temple-Inland Forest Prods. Corp., 243 F.3d 57, 64 (1st Cir. 2001) (interpreting New Hampshire law and citing R. Zoppo Co. v. City of Manchester, 122 N.H. 1109 (1982)). Nor does unjust enrichment require a contractual relationship between the plaintiff and defendant. Id. (citing Presby v. Bethlehem Vill. Dist., 120 N.H. 493 (1980)). Finally, a "defendant's retention of a benefit is 'unconscionable' when it 'affronts the sense of justice, decency, or reasonableness' or is '[s]hockingly unjust or unfair.'" Id. at 632 (quoting Black's Law Dictionary 1757 (10th ed. 2014)).

Of course, "the mere fact that [Judith] received money to which other family members may feel entitled does not constitute unjust enrichment." In re Estate of McIntosh, 146 N.H. 474, 479 (2001). But that is not what Eric alleges. Instead, he alleges that, contrary to his duties to the

15

Trust, George failed to ensure that Trust Property he used to purchase real estate property was returned the Brunstad Family Living Trust following his death. Eric alleges that, because the proceeds from the sale of the Abbey Lane property rightfully belong to the Trust, not Judith, it would not be fair for Judith to retain them. In other words, Eric alleges that, as a result of George's failure to comply with his responsibilities to the Brunstad Family Living Trust, Judith received a benefit (the proceeds from the Abbey Lane property sale) to which she is not entitled, and which would be unjust and unreasonable for her to retain. Those allegations suffice, at this stage, to withstand Judith's motion to dismiss.[4]

V.    Accounting (Count Five)

With respect to Eric's claim for an accounting "of the property located at 3 Abbey Lane, Unit 7, Meredith, New Hampshire, together with its proceeds" Judith again notes that the current owners of the Abbey Lane property are not parties to this case, and an accounting cannot be had of the property in their absence. In his objection to Judith's motion, Eric counters that he seeks only to "compel Judith to account for her disposition of the Abbey Lane Property and the proceeds from its sale." Doc. no. 40-1 at 16. Again, Eric's representation appears at odds with the language in his amended complaint. Nevertheless, to the extent that Eric seeks an accounting of the Abbey Lane property itself, Judith's motion is granted.

Judith has not shown that she is entitled to dismissal of the claim otherwise. Although it is far from clear that Eric can maintain a claim against Judith since she is not the executrix of George's estate, at this early stage of the litigation, the court cannot resolve whether the parties'

---

[4] Judith also argues that Eric's unjust enrichment claim is time-barred. That argument is not persuasive for reasons stated in the court's discussion of Eric's declaratory judgment and constructive trust claims.

16

relationship suffices to give rise to a claim for accounting. Therefore, Judith's motion to dismiss Count Five, other than as provided above, is denied.[5]

The claim and Eric's objection to the motion to dismiss are unclear about the claimed source of his legal entitlement to an accounting. To the extent that Eric alleges it based on his argument that Judith is an executor *de son tort* because of her status as an intermeddler, the court denies the motion to dismiss without prejudice and requires further briefing from the parties for the reasons discussed with regard to Count One.

VI.    Breach of Fiduciary Duty (Count Six)

Eric's claim for breach of fiduciary duty is based on his claim that Judith is an executor *de son tort* because of her status as an intermeddler. For the reasons discussed above with regard to Count One, the court cannot determine whether it has jurisdiction over this claim without further briefing from the parties. Therefore, the court denies the motion to dismiss as to Count Six without prejudice.

VII.    Tortious Interference with Inheritance or Gift (Count Seven)

Judith moves to dismiss Eric's tortious interference with inheritance or gift claim, arguing that the New Hampshire Supreme Court has not recognized that claim. She adds that even if the tort is recognized, the claim would fail because Eric has an adequate remedy in probate.

---

[5] The court notes that Eric's amended complaint and objection have "not established a need for accounting as the exact same information could be found in future discovery." Romano v. Site Acquisitions, Inc., No. 15-CV-384-AJ, 2016 WL 50471, at *4 (D.N.H. Jan. 4, 2016). Thus, for efficiency's sake, Eric may want to consider whether Count Five is necessary as this litigation proceeds.

Federal courts apply substantive state law when exercising diversity jurisdiction over state law claims. Manning v. Boston Medical Center Corp., 725 F.3d 34, 56 (1st Cir. 2013). When the state's highest court has not spoken directly on the question at issue, the court "must try to predict 'how that court likely would decide the issue,' looking to the relevant statutory language, analogous state Supreme Court and lower state court decisions, and other reliable sources of authority. Miller v. Sunapee Difference, LLC, 308 F. Supp. 3d 581, 594 (D.N.H. 2018) (quoting Gonzalez Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 318–19 (1st Cir. 2009)).

The New Hampshire Supreme Court has not recognized a claim of tortious interference with inheritance. However, in Doyon v. Porter, No. 18-CV-1128-JD, 2019 WL 2603904, at *2-4 (D.N.H. June 25, 2019), this court (DiClerico, J.) concluded that New Hampshire would recognize the claim. Judith disputes Doyon's reasoning, but the court sees no reason to depart from its holding. See Doyon, 2019 WL 2603904, at *3-4.

Judith further argues that Eric's claim fails because he has an adequate remedy in probate. However, she does not explain sufficiently in any sort of detail what Eric's remedy in probate court might be, especially since neither Judith nor Eric contends that the Trust property (the proceeds of the sale of the Abbey Lane property, specifically) falls within George's estate. Thus, Eric's remedies in probate court are likely inadequate.

For those reasons, Judith's motion to dismiss Eric's tortious interference with inheritance or gift claim is denied.

VIII.    Intentional Infliction of Emotional Distress (Count Eight)

Judith moves to dismiss Eric's claim for intentional infliction of emotional distress for failure to state a claim. She argues that that the claim must be dismissed because Eric "fails to sufficiently plead extreme and outrageous conduct as a matter of law." Doc. no. 39-1 at 22.

Under New Hampshire law, the "standard for making a claim of [intentional infliction of emotional distress] is very high." Moss v Camp Pemigewassett, Inc., 312 F.3d 503, 511 (1st Cir. 2002). To state a claim, "a plaintiff must allege that a defendant by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to another." Tessier v. Rockefeller, 162 N.H. 324, 341 (2011) (quotation omitted) (cleaned up). The standard for extreme and outrageous conduct is satisfied only in those cases "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id. (quoting Mikell v. Sch. Admin. Unit No. 33, 158 N.H. 723, 729 (2009)) (cleaned up).

Eric argues that Judith's argument mischaracterizes his claim, as well as her own behavior, and that her actions are sufficiently extreme. He contends that his claim is based on several acts taken by Judith, including her efforts to conceal George's sexual abuse of children; her involvement in and concealment of "stripping Eric of his inheritance"; her taking of property that did not belong to her; and, finally, her behavior towards Eric following his recollection of the sexual abuse he suffered. With respect to Judith's response to Eric's recollection specifically, Eric adds that Judith understood that the "worst possible thing" she could do in response "would be to deny or dismiss Eric's experience." Doc. no. 40-1 at 20. Despite that understanding, that is precisely how Judith reacted, "intentionally to harm" Eric. Id. While this language is drafted

19

appropriately to convey Eric's feelings about the severity of Judith's behavior, her actions are insufficient to meet the high bar for such claims under New Hampshire law.

Eric relies on Doe v. West Alton Marine, LLC, 646 F. Supp. 3d 315, 322 (D.N.H. 2022), in support. However, his reliance is misplaced since the case is factually distinguishable. In West Alton Marine, five child victims asserted claims for intentional infliction of emotional distress against their former employers, the owners of a marina, arising out of the sexual assault and abuse the children suffered while working at the marina. The victims alleged that the owners knew of the abuse and did nothing to stop it. They further alleged that the defendants had knowingly facilitated the perpetrator's access to the victims by making the perpetrator their direct supervisor.

The West Alton defendants argued that the intentional infliction of emotional distress claim should be dismissed since the plaintiffs had alleged, at worst, their inaction (that the defendants knew about the abuse and had failed to intervene). The court disagreed: "Plaintiffs allege that defendants did more than just fail to act; plaintiffs allege that defendants knew of [the perpetrator's] history of abuse, failed to stop it, and, in fact, facilitated the abuse." Id. at 328. The court also considered the "power dynamics at play" between the parties, noting that the allegations "involve a workplace with child-employees whom defendants placed in harm's way by assigning [the perpetrator], an adult with a known history of abusing minors, the job of acting as their direct supervisor." Id. at 326. "If true," the court wrote, "the allegations are 'atrocious and utterly intolerable.'" Id. (quoting Drake v. Town of New Boston, No. 16-cv-470, 2017 WL 2455045, at *11 (D.N.H. Jun. 6, 2017)).

Unlike the plaintiffs in West Alton, Eric does not allege that Judith took any action to facilitate George's sexual abuse of Eric, which occurred when Eric was eight, or George's sexual

20

abuse of any other child. While Eric does allege that Judith concealed George's sexual abuse of her granddaughters from him, he does not allege that Judith's efforts to "cover up" George's abuse led to additional incidents of child sexual abuse. Moreover, the power imbalance present in West Alton is not present here.[6] Judith is Eric's stepmother, and, as is often the case with intimate relationships, her actions and reactions likely carried more emotional resonance for Eric. But Judith does not hold any actual or apparent authority over Eric, who was, during the operative time period, a fully-grown man.

As alleged by Eric, Judith's reaction to Eric's recollection of George's abuse was certainly hurtful. But, even when considered within the panoply of offensive actions that Eric attributes to Judith, Judith's alleged conduct falls short of the necessary characterization that it is "so outrageous" and "so extreme" that it is "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." Mikell, 158 N.H. at 729. Such conduct might be "bad conduct, but it is not outrageous and intolerable conduct." Konefal v. Hollis/ Brookline Co-op. Sch. Dist., 143 N.H. 256, 260 (1998). See also Mikell, 158 N.H. at 729 (finding that teacher's false accusation of misconduct against a student who subsequently committed suicide, while "a reprehensible act," did not "rise[ ] to the level of extreme and outrageous conduct necessary to sustain a claim for [intentional infliction of emotional distress]"). Finally, Eric's claims that Judith took property that did not belong to her and attempted to strip him of his inheritance fall well short of the types of behavior that are actionable in a claim for intentional infliction of emotional distress.

---

[6] Miller v. CBC Companies, Inc., 908 F. Supp. 1054, 1068 (D.N.H. 1995), the other intentional infliction of emotional distress case upon which Eric relies, is also distinguishable on that basis. (The plaintiff's "claim for emotional distress arises from what can be described as a series of disturbing verbal commentaries and personal attacks levied by defendants, who wielded professional power over her.") (emphasis added).

Because Eric fails to allege sufficiently extreme and outrageous conduct, he has failed to state a viable claim against Judith for intentional infliction of emotional distress. Judith's motion to dismiss Count VII must, necessarily, be granted.

IX.     Request for Punitive Damages

In his request for relief, Eric asks the court to award compensatory and punitive damages. Judith contends that Eric's request for punitive damages should be stricken because punitive damages are not allowed in New Hampshire unless authorized by statute, and no statute authorizes such a request for the claims asserted in this action. Eric responds that he is entitled to enhanced compensatory damages because the acts he alleges are "wanton, malicious, or oppressive." Doc. no. 40 at 21 (quotation omitted).

Eric's complaint requests "punitive damages," not "enhanced compensatory damages." And the two are different remedies under New Hampshire law. As the New Hampshire Supreme Court has explained, "punitive damages are not allowed in New Hampshire unless authorized by statute. No damages are to be awarded as a punishment to the defendant or as a warning and example to deter him and others from committing like offenses in the future." Stewart v. Bader, 154 N.H. 75, 88 (2006) (internal citations and quotations omitted) (cleaned up). Enhanced compensatory damages, then, are not punitive. See Bartlett v. Mut. Pharm. Co., No. 08-CV-00358-JL, 2010 WL 3659789, at *13 (D.N.H. Sept. 14, 2010).

For those reasons, the court grants Judith's request to strike Eric's prayer for punitive damages. If Eric wishes to add a prayer for enhanced compensatory damages, he is free to seek leave to file an amended complaint.

X.    Request for Jury Trial

Finally, Judith objects to Eric's demand for a jury trial in his amended complaint because Eric did not demand a jury trial in his original complaint. Thus, she argues, Eric has waived the right to a jury trial and his jury demand in his amended complaint is untimely.

Pursuant to Federal Rule of Civil Procedure 38(b), a party may demand a jury trial by serving other parties with a written demand no later than 14 days after the last pleading directed to the issue. "A party waives a jury trial unless its demand is properly served and filed," Fed. R. Civ. P. 38(d), but "the district court may, in its discretion, excuse a party's waiver of a jury trial." T G Plastics Trading Co. v. Toray Plastics (Am.), Inc., 775 F.3d 31, 36 (1st Cir. 2014) (citing Fed. R. Civ. P. 39(b)). In considering whether a party should be permitted to amend a complaint to add a jury demand, the Court of Appeals for the First Circuit has stated that courts should consider the following factors:

> (1) whether the case involves issues which are best tried to a jury; (2) whether granting the motion would result in a disruption of the court's schedule or that of the adverse party; (3) the degree of prejudice to the adverse party; (4) the length of the delay in having requested a jury trial; and (5) the reason for the movant's tardiness in requesting a jury trial.

Id. at 36 (1st Cir. 2014).

To the extent that Eric may have waived his right to a jury trial, the court finds, given the circumstances presented here, any waiver is excusable.[7] First and foremost, the case is still in its

---

[7] Typically, after the time to demand a jury as of right has expired, a party should file a motion with the court pursuant to Federal Rule of Civil Procedure 39(b), which states: "the court may, on motion, order a jury trial on any issue for which a jury might have been demanded." However, as our court of appeals instructs:

> [t]here are no precise formalities for a Rule 39(b) motion. The language and history of the rule indicate that the [motion] requirement was inserted by the draftsmen simply as a means of preventing the district court from ordering jury intervention sua sponte when the parties were unanimous in their preference for a

infancy; discovery has not yet commenced. And, while Eric does seek several equitable remedies, he also seeks monetary damages. Monetary damages are "undoubtedly legal, not equitable, in nature" and are a remedy "regularly left to jury consideration." Nightingale v. Natl. Grid USA Serv. Co., 783 F. Supp. 3d 557, 562 (D. Mass. 2025) (citing N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 46 (1937)). When "an action involves a combination of both legal and equitable claims, 'the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'" In re Basile, 472 B.R. 147, 152 (Bankr. D. Mass. 2012) (quoting Curtis v. Loether, 415 U.S. 189, 196 n.10 (1974)). Finally, and critically, Judith makes no effort to identify how she would be prejudiced by Eric's request for a jury trial.

Based on the foregoing, Judith's objection to Eric's demand for a jury trial is not persuasive.

Conclusion

For the foregoing reasons, the defendant's motion to dismiss (document no. 39) is denied as to Counts Two, Four, and Seven, denied without prejudice as to Counts One and Six, granted in part and denied in part as to Counts Three and Five, and granted as to Count Eight. The plaintiff's request for punitive damages is stricken. Within forty-five (45) days of the date of this order, the parties shall submit supplemental briefs addressing the applicability of the probate

---

bench trial. See 5 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 39.08 (2d ed. 1985). In our view, Rule 39(b) may be animated by any cognizable affirmation of one party's intent to avail himself of a jury trial.

Moores v. Greenberg, 834 F.2d 1105, 1108 (1st Cir. 1987).

exception to federal jurisdiction to the plaintiff's allegations concerning Judith's intermeddler status.

      **SO ORDERED.**

                                           _____
                                           Samantha D. Elliott
                                         United States District Judge

March 31, 2026

cc:      Counsel of Record